**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JENNIFER L. TRANT,
4711 W. Braddock Road
Apt. 20
Alexandria, VA 22311

Plaintiff,

v.

Civil Action No.: ________________

JAMES M. MURRAY
DIRECTOR, U.S. SECRET SERVICE
245 Murray Lane, SW, Building T5
Washington, DC 20223

CHAD F. WOLF
SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY
2707 Martin Luther King Jr. Avenue, SE
Washington, DC 20528-0485

Serve: James M. Murray
Director (in his official capacity),
U.S. Secret Service, or his designated representative
Communications Center
ATTN: Office of Chief Counsel
245 Murray Lane, SW, Building T5
Washington, DC 20223

Serve: Chad F. Wolf
Secretary (in his official capacity),
U.S. Department of Homeland Security,
or his designated representative
ATTN: Office of the General Counsel
2707 Martin Luther King Jr. Ave., SE
Washington, DC 20528-0485

Serve: William P. Barr, Attorney General of the United States
or his designated representative
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**JURY TRIAL DEMANDED**

Serve: Michael R. Sherwin, Acting U.S. :
Attorney for the District of Columbia :
*c/o* Civil Process Clerk :
555 4th Street, NW :
Washington, DC 20530 :
:
Defendants. :

## COMPLAINT

Comes now Plaintiff Jennifer L. Trant ("Officer Trant"), through counsel HANNON LAW GROUP, LLP, and for the Complaint against Defendants states as follows:

## INTRODUCTION

Officer Trant sues Defendants for Hostile Work Environment and Unlawful Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*: to wit, Defendants subjected Officer Trant to months of sexually offensive comments and unwanted sexual touching by a male colleague. After Officer Trant reported this harassment to several supervisors, Defendants retaliated against her in the terms and conditions of her employment and subjected her to an irregular and unauthorized investigative process with the intention of silencing her.

## JURISDICTION AND VENUE

Jurisdiction of this Court is found in 42 U.S.C. § 2000e–16. Venue is found in 42 U.S.C. § 2000e–5(f)(3).

## PARTIES

1. Officer Trant is a female and has served as an Officer for the United States Secret Service Uniformed Division since 2015. Officer Trant resides in Virginia.

2. Defendant James M. Murray joined the U.S. Secret Service ("the Service") in 1995. On May 1, 2019, he was sworn in as its twenty-sixth director.

3. Defendant Chad F. Wolf is the current Acting Secretary for the U.S. Department of Homeland Security, designated on November 13, 2019.

4. The Service was founded in 1865 as part of the U.S. Department of the Treasury. Since its founding, the scope of the Service's duties has grown beyond its original mission of protecting the Nation's currency. Recognizing its shift in focus to protection of American leaders, on March 1, 2003, the Service joined the newly-created U.S. Department of Homeland Security.

5. The U.S. Department of Homeland Security ("DHS") was founded in the wake of the attacks of September 11, 2001. And was created by the Homeland Security Act in November 2002. The Service is one agency housed within DHS.

## FACTUAL ALLEGATIONS

6. Officer Trant joined the Service's Uniformed Division in April 2015 and received training at the Service's Training Academy.

7. In August 2015, while at the training academy, Officer Trant injured her shoulder. Despite this, she remained on full-duty. Around the end of April or early May of 2016, Officer Trant was diagnosed with a labral tear and underwent surgery.

8. Thereafter, around September 2016, she was assigned on light-duty to the White House Branch Time and Attendance Office ("the TA Office") to assist with a backlog of time cards that had accumulated under the watch of Captain Larry Shannon Rigsby. Officer Trant was assigned to the TA Office at Cpt. Rigsby's request to correct the backlog before the 2018 audit.

### Unlawful Harassment of Officer Trant

9. In March 2017, Officer Trant began working with Officer Dung "Jackie" Duong ("Duong") in an office that was also shared with Sergeant Edward Kowalski. Almost

immediately, Duong began to make sexually offensive comments to Officer Trant. However, as a rule, Duong would wait for Sgt. Kowalski to leave the office before doing his preying on Officer Trant.

10. From March 2017 until approximately September 2017, during their sedentary work in the same small room, Duong engaged in the following harassing and assaultive behavior:

a. On several occasions, Duong would spin his chair around to include Officer Trant in the background of his Facetime conversation with his children, during which, Duong would refer to Officer Trant as his "girlfriend." Each time, Officer Trant told Duong to stop referring to her as his "girlfriend."

b. On several occasions, while in their TA Office outside the presence of Sgt. Kowalski, Duong would spin his chair around and wheel his chair close to Officer Trant so that his legs were near, or touching, Officer Trant's legs. During these encounters—with his legs touching hers—Duong would lean back in his chair without blinking and tell Officer Trant she was "beautiful." Each time, Officer Trant told Duong this behavior was creepy and unacceptable and that he should stop. Duong did not stop.

c. On several occasions, Duong would stare into Officer Trant's eyes while telling her she was "beautiful" or "hot." On at least one occasion, this was accompanied by Duong caressing Officer Trant's face, sliding his hand down the side of her entire face, along with telling her she was "beautiful."

d. In another, similar incident, Officer Trant closed her eyes for a moment due to a headache, at which point, she opened them to find Duong touching her face, telling her "you're so beautiful when you sleep." During some of these episodes, Officer Trant was so caught off guard and uncomfortable that she could not find words to respond.

e. On one occasion, Duong touched Officer Trant's check as she sat in her desk chair with her back to him.

f. But Duong was not content with only office interactions. On at least one occasion, Duong tried to get Officer Trant to go out for dinner.

g. On as many as five occasions, Duong asked Officer Trant to go on vacation with him. She complained to Sgt. Kowalski about many, if not all, of these incidents.

h. Around the end of summer 2017, Duong was preparing for emergency medical training ("EMT") boards. While studying, Duong opened his EMT textbook to pictures of exposed women or vaginas during childbirth, telling Officer Trant that he could not wait "to have the blood all over his face" and told Officer Trant to look at the pictures.

i. On September 8, 2017, after Officer Trant returned from leave, Duong, while leering at her chest, told Officer Trant that her "boobs look bigger" and asked her if she was "wearing a different bra." Officer Trant again complained to Sgt. Kowalski.

j. On September 19, 2017, Officer Trant had been treated for a cut on her Duong said: "at least it wasn't your pee pee."

k. On September 21, 2017, Duong asked Officer Trant whether her ear hurt. Duong began to move his hand towards Officer Trant's ear, but then touched her face.

**Officer Trant's First Notice to Supervisors about Duong's Conduct**

11. So upsetting was Duong's behavior, Officer Trant dreamed that Duong had raped her. Around August 10, 2017, Officer Trant complained to Sgt. Kowalski about Duong's conduct, and reported her dream to him. Sgt. Kowalski verbally reprimanded Duong, telling Duong it was sexual harassment. Duong's response was a dismissive "okay Sarge."

12. After being reprimanded by Sgt. Kowalski, Duong took to banging his fists on his desk or books, without warning, and with visible anger, alarming Officer Trant.

13. Within a day or two of Sgt. Kowalski being told about Duong's conduct, Sgt. Kowalski reported Officer Trant's complaints to Cpt. Rigsby. Sgt. Kowalski further told Cpt. Rigsby that he was "handling" it or that he had "taken care of it." Cpt. Rigsby did nothing further at that time.

**Others Learn about Duong and Retaliate against Officer Trant**

14. On October 3, 2017, at least a month after Officer Trant had informed Sgt. Kowalski and—by extension—Cpt. Rigsby, Lieutenant Kelley Edwards overheard coworkers discussing Duong's continuing conduct. Duong was one of her direct-reports.

15. Two days later, on October 5, 2017, Lt. Edwards approached Officer Trant who told Edwards everything that had occurred up to that point. Officer Trant asked Lt. Edwards to intervene. However, Lt. Edwards "felt [that conversation] would be best to wait until after [Duong's] boards" and to allow time for the issue to "cool down."

16. Around the same time, Lt. Edwards told Officer Trant that she could file an EEO complaint, but Lt. Edwards "recommended against it" citing her own EEO experience as a years-long "disaster…that should be avoided at all costs." Lt. Edwards said "they could take care of it … [via] other avenues." Officer Trant took this to mean Lt. Edwards and other supervisors would handle it; therefore, Officer Trant was dissuaded from filing an EEO complaint altogether.

17. On or around October 9, 2017, Lt. Edwards spoke with Duong, who acted as if this was the first time he was hearing about Officer Trant's allegations. Duong only admitted to telling Officer Trant "she was pretty." Lt. Edwards then emailed Lieutenant Daniel Shifflett, who was Duong's other direct supervisor, and briefed him on the situation to-date.

18. On or around October 10, 2017, Lt. Edwards reported to Sgt. Kowalski and Cpt. Rigsby about Duong's conduct.

19. On October 12, 2017, Lt. Edwards held a meeting with Sgt. Kowalski and Officer Trant, with Ofc. Walter J. Mulder also present "as a witness." At this meeting, Lt. Edwards again sought to dissuade Officer Trant from filing an EEO complaint, telling Officer Trant "I went through hell with the chief's office" and that she was discriminated against for making a complaint.

20. After the October 12, 2017 meeting, Lt. Edwards ordered Officer Trant to physically relocate her desk, by several feet, to a new corner of the office. This did nothing to resolve the problem of Duong's conduct.

21. Officer Trant felt betrayed and viewed the desk move as retaliation for complaining about Duong. Lt. Edwards dismissed this by saying, "when 'girls' enter small units with men [] sometimes it can be difficult."

22. At least two months had passed at this point since Officer Trant first complained about Duong, yet nothing was being done. On the other hand, Lt. Edwards emailed Duong at the end of October 12 to comfort him, telling him "I know you are going to get through this."

23. Cpt. Rigsby then arranged his own meeting with Officer Trant and Sgt. Kowalski at Ike's Restaurant in the Eisenhower Executive Office Building. During this meeting, Cpt. Rigsby also dissuaded Officer Trant from filing an EEO complaint—telling her that if she let him handle it "the Marine way" he would have "more pull and control over the situation and be able to help her more." Cpt. Rigsby disclosed that he would "crush" Duong if he kept it up.

24. Cpt. Rigsby also warned Officer Trant that if she pursued the formal EEO process she would be "alone" and that he could not guarantee the outcome. Sgt. Kowalski told Officer Trant that if she did not file an EEO complaint, she would be "taken care of."

25. Officer Trant twice asked Cpt. Rigsby to send her the EEO policies. Cpt. Rigsby never sent Officer Trant the policies.

26. After the meeting, Cpt. Rigsby reported Duong's behavior to Deputy Chief Marty J. Wilkerson, and Lt. Edwards told a supervisor Inspector David Garrett

27. Over a month after Officer Trant told Lt. Edwards about Duong's behavior, Duong finished his boards on November 5, 2017. This was also at least three months after Officer Trant first reported Duong's conduct. Lt. Edwards, Lt. Shifflett, and Cpt. Rigsby all had agreed to wait until after Duong's boards were over before addressing the situation.

28. On the morning of November 6, Lt. Edwards held two meetings, the first was at 7:30 a.m. This meeting was with Lt. Edwards, Officer Trant, Cpt. Rigsby, Sgt. Kowalski, and Officer Matthew Kelley. During this meeting, Cpt. Rigsby reprimanded Officer Trant for discussing Duong's conduct with others. Cpt. Rigsby then ordered Officer Trant not to discuss

the matter beyond those "already aware" of the situation. Officer Trant took this to include EEO counselors as well.

29. Immediately afterwards, a second "mediation" meeting took place held with Duong joining them, and Lt. Edwards's supervisor Cpt. Bittner (via teleconference). At the meeting, Officer Trant said little other than she did not want to work in the same room as Duong.

30. The Service attempted to "accommodate" Officer Trant by "asking" Duong to work midnights, which he declined. Thereafter, Officer Trant was asked to work a compressed schedule that included weekends to separate them.

31. After the meetings, Lt. Edwards told Officer Trant to use the Employee Assistance Program, which Lt. Edwards couched as a way for Officer Trant to "try to work on how revengeful" she acted towards Duong.

32. On November 7, 2017, Cpt. Rigsby notified Officer Trant by email that she was involuntarily reassigned from the TA Office at the White House Complex to 1111 18th Street—off the complex. Officer Trant objected. Cpt. Rigsby then met with Officer Trant to advise her that his transfer order would stand. He then told Officer Trant to "get her eyes less puffy" before leaving the meeting.

33. Cpt. Rigsby also informed her that when she comes off light-duty status, she would not be coming back to the White House complex. On November 8, 2017, Officer Trant's new supervisor Lieutenant Georgene Kalogeras told her that she would be forbidden from working overtime.

34. Later that day, Officer Trant finally contacted EEO counselor Kimberly Lokhard to discuss the EEO process. On November 13, 2017, Officer Trant initiated a pre-Complaint, also known as an informal complaint.

35. Five days later on November 18, 2017, the then-Acting Chief of the Service's Uniformed Division, Jack H. Powers, learned of the course of events instrumented by Cpt. Rigsby and Lt. Edwards. Chief Powers directed Inspector Terrance Bon to email Officer Trant to "put[] the ball back in [Officer Trant's] court because she was mistakenly removed" to the 1111 18th Street assignment.

36. As Chief Powers was aware, the Service's relevant EEO policies included: Human Resources and Training Manual ("HRT") 04(03) *EEO Discrimination Complaints System* (effective August 23, 2005), HRT-04(06) *Prevention of Unlawful Harassment in the Workplace* (effective February 11, 2009) with its accompanying section *Reporting Allegations of Harassment* (effective October 27, 2009), and Directive 200.070 *Prevention of Discrimination and Harassment within the Secret Service* from then-Service Director Randolph Alles (effective June 14, 2017).

37. The Uniformed Division Manual section 16 *Standards of Conduct* (effective April 10, 2012, replacing an earlier version dated May 18, 2006) requires all Uniformed Division members to comply with the Service's EEO policies, expressly incorporating the HRT manual.

38. Consequently, on November 21, 2017, the Service's Inspection Division finally began an investigation of Duong, in parallel to the EEO process. A day later, Acting Chief Powers sent an email to the entire Uniformed Division reminding the command of the Service's harassment policies noted above.

39. On February 8, 2018, Officer Trant filed a formal EEO complaint alleging retaliation and sexual harassment (case no. HS-USSS-00478-2018). The report of investigation that resulted from this was completed on June 21, 2018 and found that Officer Trant had stated a *prima facie* case for both sexual harassment and retaliation.

40. As to sexual harassment, the report concluded: "[i]n fact, management's lack of response and action contributed to the continuity of the harassing conduct." The report further found that Cpt. Rigsby's attempt to handle the matter informally "was a direct attempt to prevent and deter [Officer Trant] from engaging in her right to file an EEO Complaint…."

41. Having exhausted the administrative process, Officer Trant filed the instant Complaint.

**COUNT I:**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF 42 U.S.C. § 2000e–16(a)**

42. All of the preceding paragraphs and allegations are incorporated herein as if the same were set forth in full in this Count.

43. Officer Trant has exhausted all administrative prerequisites and has fulfilled the jurisdictional requirements for filing a Title VII action for hostile work environment.

44. Officer Trant is a member of a protected class based on her gender.

45. As described throughout this Complaint, from March 2017 until approximately November 2017, Officer Trant was harassed by Officer Dung "Duong" Duong. Duong's harassment was based on Officer Trant's gender in violation of 42 U.S.C. § 2000e–16(a).

46. Duong was responsible for, and knew of, the Service's EEO policies, which as noted above, had been in effect long before relevant events alleged here.

47. Duong's harassment was severe and pervasive to affect a term, condition, or privilege of employment. Because of Duong's conduct, Officer Trant worked under humiliating, stressful, and unprofessional conditions for months. As early as July or August of 2017, and recounted throughout this Complaint, Officer Trant made a series of notifications to the Service about Duong's conduct. The effect of these notifications is that the Service knew, or should have

known of Duong's harassment. And the Service failed to take action to prevent it in violation of 42 U.S.C. § 2000e–16(a).

48. The actions of Duong and the inactions of the Service combined to create a hostile work environment that resulted in employment discrimination against Officer Trant. This constitutes a violation of Title VII, 42 U.S.C. § 2000e–16(a).

49. The Service's failure to protect her from Duong eroded the pride she felt in her profession and in herself, and spilled into her personal life—causing her physical and emotional damage.

**COUNT II:**
**UNLAWFUL RETALIATION**
**BASED ON PRIOR PROTECTED ACTIVITY**
**IN VIOLATION OF 42 U.S.C. § 2000e–3(a)**

50. All of the preceding paragraphs and allegations are incorporated herein as if the same were set forth in full in this Count.

51. Officer Trant has exhausted all administrative prerequisites and has fulfilled the jurisdictional requirements for filing a Title VII action for unlawful retaliation.

52. From July or August 2017 through November 2017, Officer Trant engaged in protected activity in reporting Duong's offensive and unlawful conduct that is the subject of this Complaint.

53. This notice was provided to the Service via its supervisors including Sgt. Kowalski, Lt. Edwards, and Cpt. Rigsby.

54. From the first notification, Sgt. Kowalski, Lt. Edwards, and Cpt. Rigsby attempted to "handle" the matter on their own, outside the EEO process, including efforts to dissuade Officer Trant from filing altogether. These actions not only violated the Service's policies, but also 42 U.S.C. § 2000e–3(a).

55. The retaliating officials included Sgt. Kowalski, Lt. Edwards, and Cpt. Rigsby. Through them and others, the Service engaged in a series of material adverse actions against Officer Trant in violation of 42 U.S.C. § 2000e–3(a).

56. These material adverse actions were a direct result of Officer Trant's engaging in protected activity. They occurred contemporaneous with Officer Trant's notice of Duong's conduct. Therefore, a causal connection exists between Officer Trant's protected activity and the Service's materially adverse action. This constitutes unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e–3(a).

**PRAYER FOR RELIEF**

WHEREFORE, Jennifer L. Trant prays for the following relief:

a. Lost pay due to missed overtime opportunities.

b. Compensation for diminished earning capacity.

c. Non-pecuniary damages in the amount of $300,000 for pain and suffering.

d. Attorneys' fees and costs.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all issues of fact and law raised by the allegations in this Complaint.

Respectfully submitted,

HANNON LAW GROUP, LLP

/s/ J. Michael Hannon

J. Michael Hannon, #352526
333 8th Street NE
Washington, DC 20002
(202) 232-1907
Fax: (202) 232-3704
jhannon@hannonlawgroup.com

*Counsel for Jennifer L. Trant*