UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JENNIFER TRANT, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 20-cv-1457 (APM) |
| JAMES MURRAY et al., | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Since 2015, Plaintiff Jennifer Trant has served as an Officer for the United States Secret Service.  She brings this action under Title VII of the Civil Rights Act of 1964, asserting two claims.  First, Trant alleges that she was subjected to a hostile work environment caused by months of sexually suggestive comments and unconsented-to touching by a male colleague.  Additionally, Trant claims that, when she reported this harassment, her employer retaliated against her by discouraging her from participating in the Equal Employment Opportunity ("EEO") process, relocating her desk within the office she shared with her harasser, and transferring her laterally to another office location.

Defendants—the heads of the Secret Service and the Department of Homeland Security, in their official capacities—have moved for summary judgment on both claims.  Having reviewed the record evidence, the court finds that a reasonable jury could conclude (1) that Plaintiff faced a hostile work environment and (2) that Defendants retaliated against Plaintiff by discouraging her from reporting the colleague's harassment and by transferring her to a different location.  On the

other hand, the court finds that no reasonable jury could conclude that Defendants retaliated against Plaintiff by moving her desk. The court therefore grants in part and denies in part Defendants' Motion for Summary Judgment, ECF No. 14 [hereinafter Defs.' Mot.].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of" the record that "it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.

Once the moving party has made an adequate showing that a fact cannot be disputed, the burden shifts to the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks omitted). The nonmoving party may oppose the motion using "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp.*, 477 U.S. at 324. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[t]o defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials." *Dormu v.*

*District of Columbia*, 795 F. Supp. 2d 7, 17 (D.D.C. 2011) (citing *Celotex*, 477 U.S. at 324). In other words, if the nonmovant's "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). Summary judgment, then, is appropriate when the nonmoving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252.

## III. DISCUSSION

The court begins with Plaintiff's hostile work environment claim before turning to her theories of retaliation.

### A. Hostile Work Environment Claim

#### 1. Acts Comprising Plaintiff's Claim

To make out a hostile work environment claim, Plaintiff must show that she was subjected "to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (internal quotation marks omitted). In deciding whether the evidence meets that standard, "the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.*; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances."). "[I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *see also Baird v. Gotbaum*, 792

3

F.3d 166, 172 (D.C. Cir. 2015) ("[T]he standard for severity and pervasiveness is . . . an objective one." (citing *Harris*, 510 U.S. at 21)).

A reasonable jury could conclude that Plaintiff was subjected to a hostile work environment. Taking the evidence in the light most favorable to Plaintiff, the facts are as follows. From March 2017 through October 5, 2017, while temporarily detailed to the White House Branch Time and Attendance subunit of the Time and Attendance Office, Plaintiff shared a small office with Officer Dung "Jackie" Duong, among others. Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot., ECF No. 16 [hereinafter Pl.'s Opp'n], Pl.'s Resp. to Defs.' Stmt. of Material Facts to Which There Is No Genuine Dispute, ECF No. 16-2 [hereinafter Pl.'s Resp. to Defs.' Undisputed Facts], ¶¶ 21–23. The office space was shared by at least eight people who occupied it on a rotating basis. *Id.* ¶ 24. Officer Duong was on a rotating schedule, which meant that he and Plaintiff shared the office space one or two days per week. *Id.* ¶¶ 25–27. Over the course of approximately seven months, Duong harassed Plaintiff in the following ways[1]: referring to Plaintiff as his girlfriend in videochats with his children, *id.* ¶ 208(a)–(b); swiveling his chair around so that his legs almost touched Plaintiff's, *id.* ¶ 208(d); staring into her eyes and calling her "beautiful" or "hot," *id.* ¶ 208(e), (g); sliding "his open palm down the side of her whole fac[e] while calling her beautiful," *id.* ¶ 208(k); asking her out to dinner or on vacations, *id.* ¶ 208(h)–(i); commenting on her breast size, *id.* ¶ 208(o); showing her "pictures of women's vaginas during childbirth," *id.* ¶ 208(n); and commenting on her "pee-pee," *id.* ¶ 208(p). Plaintiff consistently told Duong "that she did not

---

[1] All of the following facts are taken from Plaintiff's Response to Defendants' Statement of Material Facts to Which There Is No Genuine Dispute. Plaintiff appended her own Statement of Material Facts to Which There Is No Dispute to her Response, but contrary to the court's direction, Defendants did not further respond. Order, ECF No. 13, at 2 ("If additional fact allegations are made by the non-movant, the moving party shall file a responsive statement of its own with its reply brief in the format set forth in paragraph B."). Defendants' failure to do so allows the court to treat these factual assertions as conceded. FED. R. CIV. P. 56(e)(2); LCvR 7(h); *Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 396 (D.C. Cir. 2020) (describing Rule 56(e)(2) and Local Civil Rule 7(h) "as obvious authority to deem [a] statement as undisputed").

approve of his behavior," and that it was "creepy, unacceptable, and it made her feel uncomfortable." *Id.* ¶ 208(c), (f), (h). Even though Plaintiff and Duong only overlapped in the office once or twice each week, Plaintiff stated that during those periods Duong's harassment "was happening on a continuous basis." *Id.* ¶ 55.

Duong's behavior "unreasonably interfere[d] with [Plaintiff's] work performance." *Durant v. District of Columbia*, 875 F.3d 685, 700 (D.C. Cir. 2017) (internal quotation marks omitted). Plaintiff had previously suffered from migraines, but they increased in both frequency and severity. Pl.'s Opp'n, Dep. of Jennifer L. Trant, ECF No. 16-5 [hereinafter Trant Dep.] at 98–99. She visited a neurologist for the first time, went to the emergency room, and was prescribed anti-seizure medication. *Id.* at 98–101. And the migraines caused her to miss work. *Id.* at 99. She also experienced severe nausea, anxiety, stomach pain, and insomnia. *Id.* at 96, 97, 99. She had nightmares Duong sexually assaulted her. *Id.* at 108. The pervasiveness of Duong's harassing behavior, the escalating nature of his conduct, and the substantial impact it had on Plaintiff, taken together, are sufficient to make a showing of a hostile work environment. *See Johnson v. Shinseki*, 811 F. Supp. 2d 336, 346 (D.D.C. 2011) (holding that hostile work environment claim survived summary judgment where the harasser's behavior became "more aggressive over time," including "attempts to kiss [the plaintiff], uninvited visits to her office, solicitations for sex, grabbing and pinching of her breast, and grabbing and spanking of her behind," and impacted the plaintiff's mental health and caused her to leave to the workforce); *id.* (citing cases).

Defendants cite a number of cases from this District to avoid this conclusion, but the court finds them distinguishable. Defendants rely on this court's prior decision in *Tucker v. Johnson* to argue that "numerous alleged incidents between [a plaintiff] and a male colleague failed to establish an actionable" sexual harassment claim. Defs.' Mot., Defs.' Mem. of P & A in Supp. of

5

Defs.' Mot., ECF No. 14-1 [hereinafter Defs.' Mem.], at 8. But *Tucker* is different in multiple ways. First, the alleged harassment in *Tucker* consisted of a colleague's comments about the plaintiff and other colleagues' "physical characteristics" and at least three instances of the colleague sneaking up on the plaintiff and "looking down [her] shirt." *Tucker v. Johnson*, 211 F. Supp. 3d 95, 100 (D.D.C. 2016). Here, in contrast, Plaintiff has alleged escalating, "continuous" harassment whenever she and Duong overlapped in the small office to include unwanted touching, which was absent in *Tucker*. Pl.'s Resp. to Defs.' Undisputed Facts ¶ 55. Second, the period of harassment in *Tucker* lasted roughly half the length of time of Duong's conduct here. *Compare Tucker*, 211 F. Supp. 3d at 99–100 (allegations stretching from approximately June to September 2009), *with* Pl.'s Opp'n at 12 (allegations spanning approximately seven months). These differences made out a lesser showing of *Faragher*'s objective prong. And, third, the plaintiff in *Tucker* said that her harasser's acts caused her to feel "generally uncomfortable and uneasy." *Tucker*, 211 F. Supp. 3d at 101 (internal quotation marks omitted). She thus failed to show that the harassing conduct was "subjectively offensive," *Faragher*, 524 U.S. at 787, whereas Plaintiff here easily has established the subjective element of the claim. "While there is no precise formula or mathematical test to determine when conduct becomes pervasive," *Thomas v. Securiguard Inc.*, 412 F. Supp. 3d 62, 94 (D.D.C. 2019) (internal quotation marks omitted), the court finds that the frequency of Duong's harassment over a longer period of time, combined with its subjective effects, separates this case from *Tucker*.

Defendants miss the mark by arguing that courts in this Circuit "have dismissed sexual harassment claims more serious than the conduct alleged by Plaintiff." Defs.' Mem. at 7. Such cases have typically focused "on the severity of the actions rather than their pervasiveness, and the isolated nature of the incidents was important to the decisions." *Thomas*, 412 F. Supp. 3d at 93–94.

Yet "[t]he test set forth by the Supreme Court [in *Harris*] is whether the alleged conduct is 'sufficiently severe *or* pervasive'—written in the disjunctive—not whether the conduct is 'sufficiently severe *and* pervasive.'" *Ayissi-Etoh v. Fannie Mae,* 712 F.3d 572, 579 (D.C. Cir. 2013) (Kavanaugh, J., concurring). That pervasiveness was found lacking in another case Defendants cite, *Akonji v. Unity Healthcare, Inc.*, where the alleged harassment consisted of "five discrete acts over [a] two-year period." 517 F. Supp. 2d 83, 98–99 (D.D.C. 2007); *see* Defs.' Mem. at 6. Plaintiff here has alleged much more. According to the EEO investigation, Duong harassed Plaintiff at least fifteen times over a seven-month period. *See* Defs.' Mot., Report of Investigation, ECF No. 14-5 [hereinafter EEO Report], at 000161–162. If Plaintiff and Duong worked together, on average, 1.5 days per week, this would amount to harassing behavior occurring one out of every three of their overlapping workdays (15 ÷ (32 weeks × 1.5 days per week)).[2] This pattern of conduct is similar to that in *Norris v. Washington Metropolitan Area Transit Authority*, where "five incidents within two months" were credited as sufficiently "pervasive." 342 F. Supp. 3d 97, 125 (D.D.C. 2018). In this case, it is "the pervasiveness of [Duong's] conduct" that gives rise to "a genuine factual dispute for the jury as to whether" Plaintiff's working environment was abusive. *Thomas*, 412 F. Supp. 3d at 94; *see also Simms v. Ctr. for Corr. Health & Pol'y Stud.*, 794 F. Supp. 2d 173, 192–93 (D.D.C. 2011).

    2.    *Defendants' Liability for the Hostile Work Environment*

Defendants urge entry of judgment on an alternative ground. They claim that, even if Duong's acts toward Plaintiff establish a hostile work environment, the agency is not vicariously

---

[2] Defendants contest this pervasiveness, in part, by pointing out that Plaintiff and Duong were not always scheduled to work the same shifts and overlapped in the office only once or twice weekly. Defs.' Mem. at 5. But that argument misses the point. The fact that Plaintiff and Duong did not work together daily only magnifies the pervasiveness of his harassment, which occurred routinely when they were together. That Plaintiff was not being harassed on days she did not work with Duong does not cleanse her work environment of his persistent sexually harassing conduct.

liable for them. Under the *Faragher* line of cases, an employer is vicariously liable for an employee's harassing behavior if it is perpetrated by the employee's supervisor or "if the employer was negligent with respect to the offensive behavior." *Vance v. Ball State Univ.*, 570 U.S. 421, 427, 429 (2013). There is no dispute that Duong did not supervise Plaintiff or have authority over her. Defs.' Reply in Supp. of Defs.' Mot., ECF No. 18 [hereinafter Defs.' Reply], at 7; Defs.' Mot., Defs.' of Material Facts as to Which There Is No Genuine Dispute, ECF No. 14-2 [hereinafter Defs.' Undisputed Facts], ¶ 14. Therefore, the question is whether Defendants were negligent in responding to Plaintiff's complaints. Defendants bear the burden of showing there is no genuine dispute of material fact that would establish their negligence. *Faragher*, 524 U.S. at 780 (holding that employer's vicarious liability for a hostile work environment predicated on sexual harassment is "subject to an affirmative defense looking to the reasonableness of the employer's conduct"). They fail to meet their burden.

In this Circuit, employers can be held liable for the harassing conduct of a non-supervisor "if the employer knew or should have known of the harassment and failed to implement prompt and appropriate corrective action." *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999). Plaintiff has pointed to a dispute over when she first disclosed the harassment to Defendants' management, Pl.'s Opp'n at 21–23; Pl.'s Opp'n, Pl.'s Stmt. of Material Facts to Which There Is a Genuine Dispute, ECF No. 16-3 [hereinafter Pl.'s Disputed Facts], ¶ 3, and as to the effectiveness of the remedial actions eventually taken, Pl.'s Opp'n at 23–30. Plaintiff attests that she disclosed Duong's harassment in March 2017, Pl.'s Opp'n at 22, while Defendants claim that it was not "until around August of 2017," Defs.' Undisputed Facts ¶¶ 38, 49. Defendants respond that Plaintiff is required to bring forth evidence beyond "her own self-serving deposition testimony" in support of her claim. Defs.' Reply at 8. Not so. "[T]here is no rule of law that the

8

testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion." *Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016) (internal quotation marks omitted). Even where a party-witness's testimony "may be impaired by party self-interest, it is ordinarily the role of the jury—not the court on summary judgment—to discount it accordingly." *Id.* As there is no basis to discredit Plaintiff's testimony at this juncture, there remains a dispute of fact as to how look it took for Defendants to respond to her reports of harassment. *See Curry*, 195 F.3d at 662 n.17 ("Factors in assessing the reasonableness of remedial measures may include the amount of time that elapsed between the notice and remedial action.").

Moreover, there remains a dispute as to whether Defendants acted appropriately when they eventually did act. Plaintiff points to the deposition testimony of an Acting Chief of the Secret Service, who reversed the actions of Plaintiff's supervisors and described their conduct as categorically wrong. Pl.'s Opp'n at 21–22; *see* Dep. of Jack Powers, ECF No. 14-8, at 17–18 (faulting Plaintiff's supervisor for failing to ensure Plaintiff's accusation went "up through his chain of command"); *id.* at 33–34 (agreeing that Plaintiff's supervisors should have gone "around their supervisors to ensure that action is being taken"); *id.* at 39–40 (stating that the lead EEO specialist informed the acting chief that moving Plaintiff "was improper . . . because it could make the victim feel like she had done something wrong"); *id.* at 51–52 (acknowledging that Plaintiff's "situation had been mishandled" and that Powers "mistakenly removed [Plaintiff] from the previous physical location"); *id.* at 52–53 ("I inappropriately moved Ms. Trant[.] . . . I made a mistake."); *id.* at 56 (stating that the EEO specialist told Powers that his decision to relocate Plaintiff "out of the area . . . was improper"). Defendants, on the other hand, claim that their remedial actions were entirely appropriate. Defs.' Reply at 9–11. This gulf in viewpoints means

there remains a genuine issue of material fact as to Defendants' corrective actions and liability. Defendants are unable to meet their burden to prove that they were not liable for the hostile work environment Plaintiff faced.[3]

### B. Retaliation Claims

Next, the court considers whether the adverse treatment that Plaintiff experienced at work constituted unlawful retaliation because of her protected activity. Title VII prohibits employers from retaliating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To prove unlawful retaliation under Title VII, "a plaintiff must show: (1) that [she] opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against [her]; and (3) that the employer took the action 'because' the employee opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012). Once an employer comes forward with a legitimate, nonretaliatory reason for the challenged employment action, as here, the court must decide whether the employee has demonstrated intentional retaliation. *Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016). A plaintiff can survive summary judgment "by providing enough evidence for a reasonable jury to find that the

---

[3] While the parties largely focus on it in the retaliation sections of the briefing, the court also takes note of Plaintiff's allegation that one of Defendants' remedial actions was ordering her "to physically relocate her desk, by several feet, to a new corner of the [small, shared] office." Compl. ¶ 20; *see also* Pl.'s Resp. to Defs.' Undisputed Facts ¶¶ 125–137. Out-of-circuit precedent makes clear that even greater distances between the alleged harasser and victim were insufficient. *See Homesley v. Freightliner Corp.*, 61 F. App'x 105, 113–14 (4th Cir. 2003) (denying application of the *Faragher* affirmative defense where the defendant moved an alleged harasser "100 feet away," a remedy that "was grossly inadequate and did nothing to stop continued stalking and staring"); *Leblanc v. Coastal Mech. Servs., LLC*, No. 04-80611-CIV, 2005 WL 8156079, at *11 (S.D. Fla. Aug. 24, 2005) (finding "a genuine issue of material fact . . . as to whether Defendant's corrective actions were reasonably calculated to stop the harassment" where Defendants moved a coworker accused of harassing the plaintiff to a "different building[] a few hundred feet" away). This is further grounds for the court's denial of a grant of summary judgment in the instant case.

employer's proffered explanation was a pretext for retaliation or discrimination." *Id.* (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012)).

There is no dispute that Plaintiff notifying Defendants of the alleged harassment constitutes protected oppositional conduct. Pl.'s Opp'n at 32; Defs.' Mem. at 14 ("For purposes of this motion only, Defendants do not dispute that Plaintiff engaged in protected activity when she reported the alleged harassing behavior by Officer Duong to the Secret Service."). The court therefore turns its focus to whether Defendants took materially adverse employment actions against Plaintiff. Plaintiff points to three.

First, Plaintiff alleges she was dissuaded and discouraged from filing an EEO complaint. Pl.'s Disputed Facts ¶ 14; Trant Dep. at 90–91. The court concludes that a reasonable jury could find that this qualifies as a materially adverse action. The Supreme Court has held that Title VII bars "employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). In *Fallon v. Potter*, the Fifth Circuit held that where explicit threats were made against an employee contemplating an EEO action, a genuine dispute of material fact was raised as to whether a reasonable employee would have been discouraged from filing. 277 F. App'x 422, 428 (5th Cir. 2008) (listing threats including, "You just keep filing those EEO complaints and I promise you one thing—there won't be a person in this post office to testify against me," and "If you continue to file these charges, I'll show you what you're up against"). Here, there is a factual dispute over what exactly Defendants' management team said to Plaintiff regarding the filing of an EEO complaint, when, and why. Pl.'s Opp'n at 35–36. Plaintiff claims that Lieutenant Edwards, her supervisor, told Plaintiff that Edwards's own EEO complaint experience was disastrous and that filing a complaint should be avoided at all costs. *See* Trant Dep. at 90 (detailing

how Edwards related deficiencies in her own prior EEO complaint, said "that it was hell," and "basically used everything possible to tell [Plaintiff] that [Plaintiff] shouldn't be doing that"). Edwards, on the other hand, claims that she "never deterred [Plaintiff] from filing a complaint with the EEO process." EEO Report at 000298; *see also* Pl.'s Resp. to Defs.' Undisputed Facts ¶ 178. Although Edwards's comments, if true, are not as threatening as those in *Fallon*, there remains a genuine dispute of material fact as to their deterrent effect on a reasonable employee. Therefore, this retaliation claim survives summary judgment.

Next, the court considers Plaintiff's claim that being ordered to "physically relocate her desk, by several feet, to a new corner of the office" also amounts to retaliation. Pl.'s Opp'n at 37. This does not rise to the level of an adverse action. Plaintiff claims that this move led her to feel betrayed and as if the onus was on her "to solve Duong's sexually harassing behavior." Pl.'s Disputed Facts ¶ 31; EEO Report at 000269. But that is not enough. A court in this District previously found that relocating coworkers accused of harassment while failing to relocate the plaintiff's workstation did not amount to retaliation. *Vines v. Gates*, 577 F. Supp. 2d 242, 257 (D.D.C. 2008). While the facts are distinct, this court reads *Vines* to illustrate that an inadequate physical separation from a harasser, without more, is not the type of action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68. Moreover, Plaintiff cites no cases either within the Circuit or without to support the argument that inadequate remedial measures qualify as an adverse action, and the court was unable to find any. Plaintiff therefore has failed to bring forth evidence of any objective tangible harm arising from the move of her workstation. *See Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013). The court therefore finds that Defendants are entitled to summary judgment as a matter of law on this retaliation claim.

The court comes to a different conclusion as to Plaintiff's third and final retaliation allegation: her relocation and lateral transfer away from the White House complex. This relocation removed Plaintiff from the audit work she was performing at the White House and back to her original assignment. Trant Dep. at 77–80. The D.C. Circuit has instructed that "[w]hether a particular reassignment of duties constitutes an adverse action for purposes of Title VII is generally a jury question." *Czekalski v. Peters*, 475 F.3d 360, 365 (citing *Burlington Northern*, 548 U.S. at 72). Courts in this District have routinely recognized that a reduction of overtime earnings or opportunities qualifies as an adverse employment action for purposes of a retaliation claim. *See, e.g.*, *Tridico v. District of Columbia*, 130 F. Supp. 3d 17, 27–28 (D.D.C. 2015) (limitation of overtime leading to a potential loss of $21,000 in income qualifies as a materially adverse action); *Robinson v. Winter*, 457 F. Supp. 2d 32, 34 (D.D.C. 2006) (holding that "denial of overtime," among other employer actions sufficed to make a *prima facie* case of a materially adverse retaliatory action); *cf. Teliska v. Napolitano*, 826 F. Supp. 2d 94, 99–100 (D.D.C. 2011) (holding allegation of denial of overtime by the Secret Service, among other actions, sufficient to survive a motion to dismiss on a retaliatory hostile work environment claim). In this case, Plaintiff asserts that she was unable to earn overtime after her relocation. Trant Dep. at 82; Pl.'s Resp. to Defs.' Undisputed Facts ¶¶ 164–166. Defendants contend otherwise. Defs.' Undisputed Facts ¶ 165. That factual dispute is sufficient for Plaintiff's relocation-based retaliation claim to survive summary judgment.

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, the court grants in part and denies in part Defendants' Motion for Summary Judgment, ECF No. 14. Plaintiff's hostile work environment claim and retaliation claims for discouraging the EEO filing and relocating her from the White House complex raise

genuine issues of material fact that cannot be resolved on summary judgment. The court finds no such issue with respect to her workstation relocation retaliation claim.

Dated: March 5, 2022

Amit P. Mehta
United States District Court Judge